---

### In re CHAPPELL'S ESTATE.

(Supreme Court, Appellate Division, Third Department. June 27, 1912.)

1. TAXATION (§ 895*)—COLLATERAL INHERITANCE TAXES—VALUATION OF CORPORATE STOCK.

The true rule for appraising corporate stock, to fix the collateral inheritance tax thereon, is its actual market value, and in determining such value the amount of the stock, the market for it, and whether a large block may be sold must be considered.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

2. TAXATION (§ 895*)—COLLATERAL INHERITANCE TAXES—VALUATION OF CORPORATE STOCK.

Where the apparent book value of stock was about $140 per share, but, when deducting the "water," the apparent book value was about par, $100 per share, but the stock had never sold for more than $70 per share, and the stock could perhaps be sold in blocks of 100 or 200 shares each at $60 per share, a valuation of $90 a share for the assessment of the collateral inheritance tax was excessive, and there must be a new appraisement.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

Betts, J., dissenting.

Appeal from Surrogate's Court, Madison County.

Proceedings to determine the collateral inheritance tax on the estate of C. Will Chappell, deceased. From an order fixing the tax, the party aggrieved appeals. Reversed, and remitted for further hearing.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Hiscock, Doheny, Williams & Cowie, of Syracuse (Leroy B. Williams, of Syracuse, of counsel), for appellant.

Albert E. Campbell, of Canastota (H. W. Coley, of Canastota, of counsel), for respondent.

JOHN M. KELLOGG, J. [1, 2] The intestate owned 3,219 shares of stock in the National Casket Company, which in the order appealed

from are appraised at $90 per share. The company was capitalized at $4,350,000, in shares of $100 each, with a bonded debt of $800,000. Its reports indicate a surplus of $1,544,572.98, which had been accumulated from the earnings of the last 22 years. This made the apparent book value of the stock about $140 per share. It pays a 5 per cent. dividend.

Mr. Chase, a banker, a director in the company, and one of its organizers, swore that, when the company was organized, property was turned into it at $1,447,806.26 over cost, which, as he says, was really water. Deducting the so-called water left its apparent book value about par. Mr. Chase swears the highest price the stock had sold for was $70 per share. The intestate was the president and general manager of the company, and it is not probable that his death enhanced the value of the stock.

The evidence indicates that there was no real market for any large amount of stock. The witness Chase says that this stock could perhaps be sold in blocks of 100 or 200 shares each at $60 per share. He contrasts its value unfavorably with United States Steel common, which was then selling at $78. Some sales of this stock had taken place at $60.

The true rule for appraising property of this kind is its actual market value. The fact that there was not a ready market for a large amount of the stock has a direct bearing. There is an entire absence of anything in the record to justify the appraisal of this stock at $90 per share. The amount of the stock, the market for it, and whether a large block could be sold are elements to be considered in fixing its value.

The United Wireless Telegraph Company's stock is valued in the order at $3,300. The evidence indicates that the 100 shares of preferred stock had a sale value of $15 per share, and that the common stock was without value. It is true that the company was asking $20 per share for the preferred stock, but was paying $10 per share for selling it at that price. There was an evident overvaluation of this stock.

While the notice of appeal indicates that a review as to the other items is desired, it does not appear that their value was contested before the surrogate. As a new appraisement is to be had, it is not necessary now to give them further consideration.

The order appealed from is therefore reversed upon the law and the facts, and the matter remitted to the surrogate for further hearing and consideration, with the right to give either party a hearing as to any matter specified in the notice of appeal, without costs. All concur except BETTS, J., who dissents.