MARCUS MAYER et al., Respondents, *v.* ANGELO R. MONZO, Appellant.

**Stockbrokers — sale of stocks carried on margin — when sold without reasonable notice to customer, such sale constitutes a conversion — action by stockbrokers to recover sum claimed to be due from customer — when customer may interpose claim for value of his stocks purchased on margins and sold by parties to whom plaintiff had hypothecated them as collateral.**

1. A broker intending to sell stocks carried on margin for a customer must give reasonable notice of the time and place of such sale if he would avoid the charge of conversion.

2. A person whose stocks have been converted is entitled to a reasonable time after notice of the conversion within which to determine whether he will purchase other stocks in the place thereof and he may use as a basis for his claim of damages resulting from the conversion the highest prices which have prevailed during such reasonable period.

3. In an action by plaintiffs, who were stockbrokers, to recover a sum claimed to be due them from defendant on the purchase of stocks held by them as collateral, which stocks were sold without notice to defendant by the parties with whom plaintiffs had hypothecated them, defendant sought to establish a counterclaim on the ground that the sale amounted to a conversion and that before he learned of this conversion, about a year later, the value of the stocks had so increased as to create a balance in his favor over and above the amount due thereon. The court dismissed his counterclaim as matter of law, and the plaintiffs attempt to sustain this dismissal by the claim that defendant knew of the conversion at about the time it occurred, and that the value of his stocks then was so low as not to establish any counterclaim which would diminish plaintiffs' recovery as now allowed, *Held*, that while a jury might find facts charging defendant with knowledge of the conversion at about the time it occurred, and when prices of his stocks were too low to establish a claim which would diminish plaintiffs' recovery, this knowledge could not be imputed as matter of law and that, therefore, it was error to dismiss his counterclaim.

*Mayer* v. *Monzo*, 165 App. Div. 910, reversed.

(Argued October 16, 1917; decided November 13, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1914, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert C. Smyth* and *Roderic Wellman* for appellant. Defendant, in attacking the dismissal of the counterclaim, is entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in his favor. (*Place* v. *N. Y. C. & H. R. R. R. Co.,* 167 N. Y. 345.) It is only where there is no evidence which, if believed, is legally sufficient to sustain a verdict, that the court is called upon to nonsuit or dismiss a counterclaim. (*McDonald* v. *Metropolitan S. R. Co.,* 167 N. Y. 66.) The credibility of witnesses is always a question for the jury, unless it can be shown by science and common knowledge that their testimony must be absolutely false. (*Walters* v. *Syracuse R. T. Ry. Co.,* 178 N. Y. 50.) There was legally sufficient evidence of conversion by wrongful sale. (*Small* v. *Housman,* 208 N. Y. 115; *Toplitz* v. *Bauer,* 161 N. Y. 325.)

*William F. Goldbeck* for respondents. There was no question for the jury. (*Smith* v. *Savin,* 141 N. Y. 315; *Colt* v. *Owens,* 90 N. Y. 368; *Minor* v. *Beveridge,* 141 N. Y. 399; *Mullen* v. *Quinlan,* 195 N. Y. 109; *Barber* v *Ellingwood,* 135 App. Div. 549; *Wright* v. *Bank of Metropolis,* 110 N. Y. 249; *Griggs* v. *Day,* 158 N. Y. 1.) No damage resulted to defendant from the sale by the banks. His actual knowledge of plaintiffs' failure put him upon notice that his stocks were thereby placed in jeopardy, whether an immediate sale of them took

place or not, and knowing the condition of his account, he knew that there were but two ways open to him to protect himself: (1) To tender his debit balance and redeem the stocks, or (2) replace them by purchase in the open market. Having done neither, he cannot hold plaintiffs on the theory of conversion, except for such damages as accrued within a reasonable time after this opportunity to act had been afforded him. Under the law, it was his duty to act promptly and within a reasonable time. (*Wright* v. *Bank of Metropolis*, 110 N. Y. 249; *Griggs* v. *Day*, 158 N. Y. 1; *Burnham* v. *Lawson*, 118 App. Div. 389.) No conversion of any kind was committed by plaintiffs, as against the defendant, or of which the defendant has any right to complain. (*Markham* v. *Jaudon*, 41 N. Y. 235.)

HISCOCK, Ch. J. This action is brought by plaintiffs, who were stockbrokers, to recover a substantial sum of money claimed to be due to them from defendant on account of the purchase of stocks bought and carried by them for him on a margin and for such an amount they have recovered judgment. It is undisputed that this recovery was proper unless defendant was entitled to assert the counterclaim pleaded by him springing out of the alleged conversion of his stocks by the plaintiffs. This counterclaim thus far has been rejected by the courts as matter of law and the question whether this disposition was correct involves an examination of the facts making up and arising out of the relation between the parties in respect of the stocks in question.

Defendant opening his account with the plaintiffs in 1906, prior to October 22, 1907 had purchased several thousand shares of stock on margin, with the result that on that date plaintiffs were carrying for him 1,900 shares of stock which were worth about $40,000 less than the amount due thereon. These shares with those of

other customers had been pledged by the plaintiffs with various banks to secure their loans and it does not appear that defendant's stocks had in any manner been segregated from those of other people thus pledged or that any arrangement had been made between the plaintiffs and the banks by which defendant should receive notice of the time and place of any sale which the banks might be authorized to make, or that a like amount and kind of securities were retained by plaintiffs for delivery to defendant on payment of the amount due from him.

October 22, 1907, plaintiffs suspended on the Stock Exchange and made an assignment for the benefit of creditors. These proceedings were followed by involuntary proceedings in bankruptcy against them wherein a receiver was appointed who took possession of their property. Soon after these proceedings and prior to December 1, 1907, the various banks holding stocks pledged by plaintiffs and including those belonging to the defendant, made sales thereof and of these sales no notice was given the defendant. About six months after their failure, the plaintiffs having settled with their creditors, resumed business.

We think that the sale of the stock under the circumstances amounted to a conversion. The general rule is well settled that a broker intending to sell the stocks of a customer carried on margin must give reasonable notice of the time and place of such sale if he would avoid the charge of conversion. (*Content* v. *Banner*, 184 N. Y. 121; *Small* v. *Housman*, 208 N. Y. 115.) The further rule must follow that if a broker for his own indebtedness has rehypothecated his customer's stocks with another, he will not, under such circumstances as appear in this case, be relieved of the obligation to give notice to the customer of the proposed sale of the latter's stock by the new pledgee, and if this notice is not given the broker again will be chargeable with conversion. (*Roths-*

*child* v. *Allen*, 90 App. Div. 233.) Concededly no such notice as this was given.

It seems to have been held in this action and is now urged that the conversion of defendant's stocks occurred when the plaintiffs made their assignment or when bankruptcy proceedings were instituted against them, and that, therefore, there could have been no conversion when the sales by the banks occurred, and to which alleged conversion defendant's claims are now limited. We do not agree with this proposition. At the time the assignment was made and the bankruptcy proceedings were instituted, apparently defendant's stocks had already passed out of the possession of the plaintiffs and neither the assignee nor the receiver in bankruptcy ever took possession of the same. The voluntary assignment would be regarded as conveying only property which belonged to the plaintiffs and, therefore, it would not include defendant's stock, and the proceedings in bankruptcy so far as they proceeded were of an involuntary character which it does not seem to us would constitute a conversion by the plaintiffs.

Even so, however, it is alleged that the judgment dismissing defendant's counterclaim as a matter of law was properly made because he suffered no damages from the conversion. While we think a jury might find facts which would sustain this contention, we do not think that it can be upheld as a matter of law.

The rule is that a person whose stocks have been converted is entitled to a reasonable time after notice of the conversion within which to determine whether he will purchase other stocks in the place thereof and that he may use as a basis for his claim of damages resulting from the conversion the highest prices which have prevailed during such reasonable period. (*Baker* v. *Drake*, 53 N. Y. 211.) It has been held under varying circumstances that thirty days or fifteen days or sixty days

would be such reasonable period. (*Colt* v. *Owens,* 90 N. Y. 368; *Wright* v. *Bank of the Metropolis,* 110 N. Y. 237; *Minor* v. *Beveridge,* 141 N. Y. 399; *Mullen* v. *Quinlan & Co.,* 195 N. Y. 109.)

The defendant, relying upon this rule, says that he did not receive notice of the sale of his stocks for more than a year after it had occurred, and that taking advantage of the highest prices which prevailed within that period for stocks of the kind carried for him by the plaintiffs he is entitled to an amount of damages which not only would wipe out plaintiffs' claim, but in addition would give him judgment for a substantial amount against them. His conclusions are doubtless correct if it is to be assumed that he neither received nor was chargeable with notice or knowledge of the sale of his stocks until the time fixed by him. We think, however, upon the evidence as it is now presented to us that a jury might find facts which would charge him with knowledge of the sale of his stocks as of about the date when the same occurred.

Defendant was a man of mature years and of a business experience extensive and successful enough so that he had accumulated a substantial amount of property. He opened his stock account with the plaintiffs a year or so before the latter's failure and during that time had dealt in about 10,000 shares of stock which were carried for him on margin. As early as August, 1907, he knew that the value of his stocks had so depreciated that he already owed the plaintiffs a large balance over and above their value, and he was pressed by the latter to put up additional margins which he failed to do. He knew of plaintiffs' suspension and failure at or about the time the same occurred; that a receiver had taken possession of their office, and that presumably any property which they held had passed into the possession of others. He also knew that an acute and wide-spread panic was

prevailing in the stock market resulting in constant declines in the value of stocks, and that his stocks were subject to sale for the payment of the indebtedness due on account of the purchase price thereof.

Notwithstanding these facts, with the knowledge of which he might be charged by a jury, he made no inquiries concerning the location or disposition of his stocks, but purposely refrained from taking any steps in relation to the latter on the theory and with the purpose that he might thereby be relieved from putting up more money on account thereof, and that the plaintiffs might be held responsible for his stocks until prices had appreciated and he was able to escape from his venture without loss.

Of course the defendant swears to some facts different than these, but a jury is not compelled to believe statements so unnatural as to seem incredible simply because some interested witness has sworn to them, and we think that upon the facts which we have recited and others, it would be permissible for a jury to find that the defendant was possessed of or chargeable with such knowledge and notice of the sale of his stocks about the time the same were sold as would set running the period within which he would be compelled to determine what course he would pursue and which would fix the limit of prices which could be used as a basis for any claim of damages against plaintiffs for the conversion. (*Williamson* v. *Brown,* 15 N. Y. 354, 360; *Hall* v. *Paine,* 224 Mass. 62; *Rochester Savings Bank* v. *Averell,* 96 N. Y. 467, 473; *Baker* v. *Bliss,* 39 N. Y. 70, 74; *Kirsch* v. *Tozier,* 143 N. Y. 390, 397; *Reed* v. *Gannon,* 50 N. Y. 345, 350; *Higgins* v. *Crouse,* 147 N. Y. 411, 415.)

If we are right in this, and a jury should take the view of defendant's conduct which we think it would be permitted to, it might result, as plaintiffs claim, that the defendant would not be able to recover any damages on his counterclaim, for, as said, the prices of stocks declined

rather than advanced within the period which has been suggested. Still we think that the disposition of the counterclaim involves the submission of the question which has been outlined to the jury and that it was error for the court to dismiss the same as a matter of law.

The judgment, therefore, should be reversed and a new trial granted, with costs to abide event.

COLLIN, CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.