STIBBARD v. OWEN.

1. BROKERS — CONTRACTS—PLEDGES — RIGHT OF BROKER TO SELL
WITHOUT NOTICE.
   In a customer's action against stock brokers on the theory
   that the sale of his stock without notice to him and de-
   mand for further margins amounted to conversion, the
   finding of the court that it was plaintiff's duty, under the
   agreement, to watch his margin, and that defendants could
   sell without notice, *held*, sustained by the testimony.

2. SAME—IN ABSENCE OF TESTIMONY AS TO CUSTOM, IT CANNOT BE
SAID SALE WAS UNJUSTIFIED.
   Where plaintiff had other stock pledged with defendants
   at the time of sale, but there was no testimony from
   brokers or others familiar with the business to indicate
   that the margin remaining at the time of sale was suf-
   ficient, according to recognized custom, to require defend-
   ants to continue the account, it cannot be said that the
   sale was not justified.    ·

Error to Wayne; La Joie (Ernest P.), J.    Sub-
mitted April 5, 1928.    (Docket No. 52, Calendar No.
32,123.)    Decided June 4, 1928.

Case by R. Franklin Stibbard against David M.
Owen and others, individually and as copartners, doing
business as Emmet L. Sprague & Company, for the
alleged conversion of corporate stock.    Judgment for
defendants.    Plaintiff brings error.    Affirmed.

*Aldrich & Zeleznik,* for appellant.

*Miller, Baldwin & Boos,* for appellees.

FEAD, C. J.    Defendants are stockbrokers in the city
of Detroit.    On November 15, 1921, plaintiff opened
an account with them.    He deposited 11,500 shares

of Eureka Croesus stock as collateral for the purchase
of an additional 4,500 shares on margin at 46 cents
per share.    The stock rapidly depreciated in price.
Plaintiff appreciated that the stock was volatile, and
on November 21, 1921, voluntarily and without call
from defendants deposited with them 200 shares of
Utility Compressor stock, and on November 26, 1921,
$800 in cash as additional collateral to protect his
account.    The Eureka Croesus stock was then selling
at about 30 cents per share.    The price continuing to
decrease, on January 14, 1922, the defendants, without
notice to plaintiff, sold 16,000 shares of his stock at
18 cents to 19 cents per share to pay his debt to them
of about $2,800.

Two days after the sale plaintiff demanded of de-
fendants that they reinstate his account, and upon their
refusal he commenced this suit for the value of the
stock and money he had pledged with them, upon the
theory of conversion.    The case was tried before the
court without a jury, and defendants had judgment.
Plaintiff recognized defendants' right to sell his stock
to protect themselves, but his claim was that in
arranging the account it was agreed between himself
and defendants that he would furnish further collateral
whenever defendants should call for it.    This action
is founded upon the theory that the sale amounted to
a conversion because defendants sold without notice to
him and demand for further margins.    Defendants'
claim was that:

"I told Mr. Stibbard that under the terms of our
contract, which is sent out on all invoices, that he must
abide by them and live up to them without a call from
us for margin.    It was up to him to watch his margin
at all times and come in when it was necessary, as
he knew it would be."

The invoices received by plaintiff contained, in small
print, the provision that defendants could sell, for their
protection, at any time and without notice or demand

for margin.    Plaintiff said he had not read this clause.

In his findings of fact the court found that the defendants' version of the agreement for additional margins and sale was established.    This finding was sustained by the testimony.    Consequently defendants had authority to sell plaintiff's stock without notice to him to protect themselves on his account.

Plaintiff further urged that the total value of his pledged property in defendants' hands was $4,884 and his debt to defendant $2,859.32, and, because of the discrepancy, the margin was ample and the sale was not justified.    Two thousand dollars of this margin was represented by 200 shares of Utility Compressor stock.    The evidence of value of the Utility Compressor shares was based upon subscriptions taken by the corporation in a sales campaign in which it was trying to finance itself by sale of shares.    It was not shown that there was a market for this stock.

It is well known that the margins required by brokers vary with the character of the securities dealt in, the state of the general and particular market, and other factors.    There was no testimony from brokers or others familiar with the business to indicate that the margin remaining at the time of sale was sufficient, according to recognized custom, to require defendants to continue the account.    In the absence of such testimony, the court cannot say that defendants' action was not justified.

In view of the findings of the circuit court and their legal effect, it is not necessary to discuss plaintiff's other assignments.

The judgment is affirmed.

NORTH, FELLOWS, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.