BACHE *v.* JOHNSON.

1. BROKERS—MARGIN TRANSACTIONS—RULE AS TO DEMAND FOR FURTHER MARGIN.

To justify broker in selling stock bought on margin for client, on depletion of margin, it is incumbent on broker to make demand on client for further margin, giving him reasonable time to comply therewith, in absence of special agreement between them giving to broker right to sell, without notice or demand for additional margin, at any time when margin was insufficient to protect from loss.

2. SAME—ATTEMPT TO DEMAND FURTHER MARGIN.

Where client purchasing stock on margin gave as his address certain bank of which he was vice-president, broker, in attempting to reach client over telephone at said bank to demand additional margin, was under no obligation to inform bank officials with whom he talked why he wished to communicate with said client when informed that he was out of town.

3. SAME—WHEN BROKER JUSTIFIED IN SELLING.

Where client purchasing stock on margin gave as his address bank of which he was vice-president, and broker, in attempting to demand further margin, called said bank on telephone and was informed by official with whom he talked that client was out of town, after which broker wrote client letter which was not received by him until after stock was sold, broker made reasonable effort to demand further margin, and was justified, under circumstances, in selling stock to prevent further loss.

Error to Wayne; Brown (William B.), J., presiding. Submitted June 2, 1931. (Docket No. 8, Calendar No. 35,449.) Decided October 5, 1931.

Assumpsit by J. S. Bache and others, doing business as J. S. Bache & Company, against J. L. John-

son for balance due under a broker's account. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Stevenson, Butzel, Eaman & Long (A. Hilliard Williams,* of counsel), for plaintiffs.

*Mason, Alexander & McCaslin,* for defendant.

SHARPE, J.   On November 18, 1925, the defendant purchased 500 shares of Bangor & Aroostook stock through the plaintiffs, who were stock brokers and members of the New York Stock Exchange. The purchase was made at their Detroit office. The price of the stock was $51.50 per share. Defendant deposited $7,000 margin. On March 2, 1926, plaintiffs sold this stock at $33 per share. They brought this action to recover the deficiency of $2,383.52, and had judgment therefor. Defendant seeks review by writ of error. The case was tried before the court without a jury.

When the defendant purchased this stock, he gave his address as People's State Bank, Plymouth, Michigan. He was vice-president of this bank, and his home was in Plymouth. He did not communicate with any one connected with plaintiffs from the time of his purchase until the stock was sold. About the middle of February, 1926, there were such fluctuations in the price of this stock in the market that plaintiffs began to feel insecure and attempted to communicate with the defendant for the purpose of securing additional margin. To that end, their Detroit manager called the bank at Plymouth and said to the cashier:

"This is Mr. Butler of J. S. Bache & Company. I have a very important matter I want to get in

touch with Mr. Johnson on. I would like to know where I can get in touch with him immediately.''

. He further testified that the cashier said: ·

''He was in Lansing. * * * The bank said they called his home and the home notified that Mr. Johnson was in Lansing, and they could not give the address because he did not leave an address. * * * I made several calls every day for a week. I called * * * to get Mr. Johnson's address. They said he was in Lansing.''

The bank cashier, called by the defendant, testified:

''I told him Mr. Johnson was in the house of representatives and could be reached there or at his telephone 452. He might be home. That was all the conversation. I did not know who Bache & Company were and they did not give me any information as to the kind of deal it was. That was the entire conversation. * * * Mr. Johnson had told me if any calls of any nature came in for him either to call the house or the house of representatives. He never left any particular word about a call from Bache & Company. * * * He did not leave such word when to call him at any particular time but that was always the understanding. I did not call his house or the house of representatives at this time because I was not asked to call. I just told whoever was on the other end of the wire representing Bache & Company where they could reach him. I did not call him at all.''

The defendant at that time was a member of the State house of representatives, which was in special session in Lansing. This fact, while known to the cashier, was not known to Mr. Butler.

On Saturday, February 27, 1926, plaintiffs' manager wrote defendant that their New York manager

had called for additional margin, and asked for a check therefor. The defendant testified that he was in Detroit on that day and returned to Plymouth at night.

"I received notification that Bache & Company were calling me or trying to get in touch with me. On Monday night, the first, there was a session of the house at nine o'clock. On Tuesday I was available to any one who called me at the house of representatives or who called my wife. I had a telephone in my home in Plymouth, No. 452. My wife was there at that time."

He did not receive the letter of February 27th until March 4th, after the stock had been sold. It was forwarded to him from the bank by messenger.

On the day of the sale, the market price of the stock opened at $41.25. The margin protected a valuation of $38. When it reached that price, the plaintiffs ordered the stock sold, and in the slump which followed but $33 per share was obtained for it. The day following, the price rose to $39, and within a few months the stock sold as high as $51.

There was no special agreement between the parties that the plaintiffs might sell the stock purchased for the defendant at any time when the margin deposited by the defendant became insufficient to protect them from loss without notice or demand for addition thereto, as was the case in *Stibbard* v. *Owen,* 243 Mich. 138. In the absence of such an agreement, it seems to be well settled that:

"To justify a broker in closing out the transaction on depletion of the margins, it is incumbent on him first to make demand of the client for further margins, and the demand must be such as will give the client a reasonable notice or time to comply therewith." 9 C. J. p. 547.

See, also, *Mayer* v. *Monzo,* 221 N. Y. 442 (117 N. E. 948).

Applying this rule to the facts here presented, was the sale justified? It appears from what has been said that there is dispute over whether more than one call over the telephone was made by the plaintiffs' officials on the officials of the bank. Nearly three years had elapsed after the call or calls were made before the witnesses testified relative thereto. It is undisputed, however, that the defendant, at the time of his purchase, gave his address as ''People's State Bank, Plymouth.'' The plaintiffs tried to reach him there. Defendant did not inform the bank officials of his purchase, nor, when he could not be reached at the bank, did he inform the plaintiffs that he was necessarily absent from Plymouth and in attendance on the State legislature, of which he was a member. Not being able to reach him on the telephone, the plaintiffs mailed him the letter above referred to on Saturday, February 27th, at 3:20 o'clock in the afternoon. Plymouth is but 24 miles from Detroit, and this letter undoubtedly reached Plymouth not later than Monday morning. The defendant left Plymouth for Lansing without receiving it, and it was delivered to him by messenger on March 4th. Had the defendant informed the bank that he had purchased stock on margin from the plaintiffs, the officers of the bank would doubtless have seen to it that the inquiry would have reached him. We do not think any obligation rested on plaintiffs to inform these officials why they desired to communicate with defendant. Had he received the letter on Monday, or even on Tuesday morning, he might, by communicating with plaintiffs, have prevented the sale. He testified that he was informed on Saturday that

plaintiffs were trying to get in touch with him, and yet he left Plymouth on Monday without communicating with them.

The authorities cited and relied upon are collected and annotated in 1 A. L. R. 660; 24 A. L. R. 470, and 47 A. L. R. 1108. In none of them were the facts at all similar to those here presented, and they afford but little aid in reaching decision.

In our opinion, the trial court was warranted in finding that the plaintiffs made a reasonable effort to demand additional margin from the defendant; that this sale of the stock, under the circumstances, was justified, and that they were entitled to recover the loss they had sustained.

The judgment is affirmed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.