In the Matter of the Estate of SMITH M. FLICKINGER, Deceased.

Surrogate's Court, Erie County, June 5, 1941.

*Slee, O'Brian, Hellings & Ulsh* [*Dana B. Hellings* and *John Van Sickle* of counsel], for the petitioners.

*Charles F. Boine* [*William H. Watson* of counsel], for the State Tax Commission.

VANDERMEULEN, S. Smith M. Flickinger died on April 2, 1939. Included in his estate were 816 shares of common stock of S. M. Flickinger and Company, which is a wholesale grocery concern in East Buffalo, having a plant in the United Frontier Terminal. There are 17,698 shares of common stock outstanding.

The State, in appraising the property of the decedent's estate, placed a value on this stock of $128.85 per share. The corporation falls into that class known as close corporations; the stock not being on the market but largely and closely held by the members of the family.

The State Tax Commission relies particularly on *Matter of Foster* (239 App. Div 806; affd., 263 N. Y. 639). In that case the tax appraiser determined the value of the stock by ascertaining its book value and his valuation of $214.13 per share was upheld by the surrogate. The Appellate Division held that on the facts disclosed in the record, the assessment of the shares of the corporation upon the sole basis of the book value was unfair; that some effect should be given to the earning capacity of the corporation, as shown by actual results, and that in its opinion a proper result would be reached by giving equal weight to the valuation based on book value and to that based on earning return at eight per centum, and on this basis fixed the value of $161.56 per share. The Court of Appeals unanimously affirmed the decision of the Appellate Division.

The Appellate Division and the Court of Appeals by that decision did not lay down a hard and fast rule that this was the only method of determining value. It sanctioned this method in that particular case. The Appellate Division said, " We think a proper result in this case is reached   *   *   *." 

It will be noted in this connection that the Court of Appeals in *Matter of Curtice* (185 N. Y. 543) sustained the Appellate Division (111 App. Div. 230) in which the lower court held that a large but minority holding of an unlisted stock in a close corporation should not be valued at the sales prices of smaller blocks, thus indicating another element upon which to base value.

In *Matter of Chappell* (151 App  Div. 774) it was held that the true rule for appraising corporate stock under the former Transfer Tax Law was the actual market value. There is no definition in the present statute of fair market value. It would be a very difficult matter to fix it by statute and probably this is the reason it has not been attempted. It appears to me that it would be an impossibility. Much injustice might be done when one considers the different branches of industry and commerce that are conducted by stock corporations. By the same token, it is possible that much injustice would be done by the courts if they laid down a hard and fast rule. In my judgment, the courts in determining fair market value must base their decision on the evidence produced in each individual case. What might be the fair and equitable way of arriving at this value in one case might not be in another.

The New York State Law is nearly an exact counterpart of the Federal Estate Law and it is recognized in interpreting New York State Law that decisions in respect to the Federal law are applicable. (*Matter of French*, 148 Misc. 313; *Matter of Hall*, 149 id. 217.)

Mr. Justice BREWER, in discussing the value of property under a State tax statute, said in *Adams Express Co.* v. *Ohio* (166 U. S. 185, at p. 222): " The value which property bears in the market, the amount for which its stock can be bought and sold, is the real value. Business men do not pay cash for property in moonshine or dreamland. They buy and pay for that which is of value in its power to produce income, or for purposes of sale."

A number of cases recognize that all relevant factors, having a bearing on the value of stock, should be considered. (*Laird* v. *Commissioner of Internal Revenue*, 85 F. [2d] 598; *Heiner* v. *Crosby*, 24 id. 191; *Union Trust Co.* v. *Heiner*, 19 id. 362; *Knobloch* v. *Smith*, 25 F. Supp. 156.)

In *Cleary* v. *Higley* (154 Misc. 158; affd., 246 App. Div. 698) the court, in discussing valuation of stock in a stockholders' action

to recover profits made by a syndicate in the sale of an issue of the corporation's stock, said: " Many factors enter into the determination of the value of a large block of stock such as this. It is not enough merely to rely upon the market value as established by sales on the stock exchange of small quantities. A proper valuation would involve considering the rate of return, the security afforded that dividends would be regularly paid, the possibility that dividends would be increased or diminished, the size of accumulated surplus applicable to the payment of dividends, the record of the corporation and its prospects for the future, the general investment value of the stock, the selling price of stocks of like character, the appraised and sale value of assets, book valuations, market conditions, reputation of the corporation and any other relevant evidentiary fact and circumstance entering into the value of the corporate property and reflecting itself in the worth of corporate stock. (*Matter of Fulton*, 257 N. Y. 487; *Bodell* v. *General Gas & Electric Corp.*, 15 Del Ch. 119; 132 Atl. 442; affd., 15 Del. Ch. 420; 140 Atl. 264; *People ex rel. Knickerbocker Fire Ins. Co.* v. *Coleman*, 107 N. Y. 541.) "

In *Arkansas Natural Gas Co.* v. *Sartor* (78 F. [2d] 924; certiorari denied, 296 U. S. 656) it was stated (at p. 927):

" It is admitted there are no exchange quotations or other evidence to be obtained of open and notorious market prices at which any one desiring gas could purchase it, as would be available in the sale of other commodities. In this situation the modern rule is that value may be shown by evidence of other sales, provided the conditions are substantially similar, but not otherwise. Wigmore on Evidence (2d Ed.) § 463; Jones' Evidence, Civil Cases, § 169; *Kerr* v. *South Park Commissioners*, 117 U. S. 379; 6 S. Ct. 801, 29 L. Ed. 924. Other sales may be shown by verbal testimony as well as by documentary evidence. In fact, oral evidence is, in many cases, preferable since, if nothing but the deed is produced there is no opportunity to cross-examine the parties to the sale to determine whether the price is fair. Jones' Evidence, Civil Cases, § 168.

" It is also well settled that value may be shown by the opinion of any competent person having knowledge of the facts, whether an expert or an ordinary witness. In *Montana Railway Co.* v. *Warren*, 137 U. S. 348–353, 11 S. Ct. 96, 97, 34 L. Ed. 681, it was said: ' At best, evidence of value is largely a matter of opinion.' See, also, *Nelson* v. *First Nat. Bank* (C. C. A.) 69 F. 798; *Missouri, K. & T. Ry. Co.* v. *Truskett* (C. C. A.) 104 F. 728; affirmed, 186 U. S. 480; 22 S. Ct. 943; 46 L. Ed. 1259; *Julian Petroleum Corporation* v. *Courtney Petroleum Co.* (C. C. A.) 22 F. (2d) 360; Jones' Evidence, Civil Cases, § 387."

There are a number of cases recognizing the relevancy of expert testimony as to market value of stock in a close corporation. (*Sistare* v. *Alcott*, 15 N. Y. St. Repr. 248; *General Securities Company* v. *Commissioner*, 38 B. T. A. 330; *Helvering* v. *Kimberly*, 97 F. [2d] 433; *Commissioner of Internal Revenue* v. *Shattuck*, Id. 790; *Helvering* v. *Safe Deposit & Trust Co. of Baltimore*, 95 id 806; *Wood* v. *United States*, 29 F. Supp. 853; *Knobloch* v. *Smith*, 25 id. 156; *Jenkins* v *Smith*, 21 id. 251.)

In examining the testimony of Mr. Wallace, the expert sworn on behalf of the executors, we find his estimate of value is based on a number of factors, including the following: *First*, a comparison with the stock of four other companies engaged in a like business. He gave market value of stocks selling below book value and particularized their earnings. *Second*, earning power. *Third*, physical assets. *Fourth*, book value. *Fifth*, trend of the business. He employed methods that included an analysis such as one would require if he intended to purchase. He testified the fair market value of the stock was ninety dollars per share.

The qualifications of Mr. Wallace as an expert were not questioned. Neither was any testimony offered by the State Tax Commission in contraversion of his conclusion.

I hold, therefore, that the fair market value of the stock in question, at the date of the death of the testator, was ninety dollars per share, or a total value of $73,440, and the tax should be appraised on this basis.

Submit decree in accordance with this opinion on two days' notice.