William R. VAN GEMERT et al.,
Plaintiffs-Appellants,

v.

The BOEING COMPANY and Thomas R.
Wilcox, Defendants-Appellees.

Nos. 879, 880, Dockets 77–7009, 77–7031.

United States Court of Appeals,
Second Circuit.

Argued Feb. 25, 1977.

Decided April 18, 1977.

Norman Winer, New York City (Nathan, Mannheimer, Asche, Winer & Friedman, New York City, of counsel), for plaintiffs-appellants.

Stuart D. Wechsler, New York City (Kass, Goodkind, Wechsler & Gerstein, New York City, of counsel), for plaintiffs-appellants Van Gemert, Henning, Houchins, Pearlman, Chariott.

Irving Steinman, New York City, for Committee of Attorneys, for plaintiffs-appellants.

S. Hazard Gillespie, New York City (Davis, Polk & Wardwell; Sheila T. McMeen, New York City, David E. Wagoner, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., William H. Levit, Jr., Hughes Hubbard & Reed, Los Angeles, Cal., of counsel), for defendants-appellees.

Before MANSFIELD and VAN GRAAFEILAND, Circuit Judges, and MISHLER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

This appeal arises from a consolidated class action brought by non-converting holders of the Boeing Company's 4½% convertible subordinated debentures due July 1, 1980. The amended complaint alleges that appellants had received inadequate notice of Boeing's intention to call the convertible debentures in question and were therefore unable to exercise their conversion rights prior to the deadline for the call which was midnight, March 29, 1966. The redemption price for each $100 of principal amount of debentures was $103.25. However, if appellants had been able to meet the call deadline, they could have converted each $100 of principal amount of debentures into at least two shares of common stock. On March 29, 1966 the common stock obtainable for each $100 of debentures was worth $316.25. Within thirty days thereafter the stock was worth $364. Damages demanded by appellants are based on the difference between the redemption price and the value of the common stock.

Originally, the District Court dismissed the complaint. On appeal, this Court reversed that judgment and remanded to the District Court for a determination of damages. Van Gemert v. Boeing Co., 520 F.2d 1377 (2d Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975). District Judge Ryan has now made that determination, and the case is once again before this Court.

Judge Ryan awarded damages based on the value of Boeing's common stock on March 29, 1966 which, as noted previously, was the cut-off date for the exercise of conversion privileges. He awarded no prejudgment interest. Appellants take exception to both of these rulings. They contend that, under New York's "fluctuating value" test, Judge Ryan should have valued the Boeing common stock as of April 14, 1966, when two shares of that stock were worth $364. Additionally, appellants assert that the District Court should have awarded prejudgment interest. We believe that Judge Ryan properly valued the stock as of March 29, 1966. However, we agree with appellants that they are entitled to pre-judgment interest.

■ We are satisfied that New York law controls both of these questions. In our prior opinion, we found that appellants' federal claims were sufficient to provide the District Court with jurisdiction over the case. Id. at 1382. However, the relief granted appellants was founded on State law. In finding that Boeing had failed to provide the debenture holders with reasonably adequate notice of the redemption, we held that:

The duty of reasonable notice arises out of the contract between Boeing and the debenture holders, pursuant to which Boeing was exercising its right to redeem the debentures.

Id. at 1383. It is the source of the right, not the basis of federal jurisdiction, which determines the controlling law. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540 n.1 (2d Cir. 1956); see 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3567, at 462 (1975). Consequently, in determining the proper measure of damages, New York State law is controlling.

Appellants urge us to apply the "fluctuating value" rule formulated by the New York courts for situations where there has been a conversion of stock. Succinctly stated, this rule provides that:

* Chief Judge, Eastern District of New York, sitting by designation.

The measure of damages for conversion of stock certificates is the cost of replacement within a reasonable period after the discovery of the conversion, regardless of when the conversion may have occurred . . . .. (Citations omitted).

*Hartford Accident & Indemnity Co. v. Walston & Co.*, 22 N.Y.2d 672, 673, 291 N.Y.S.2d 366, 367, 238 N.E.2d 754 (1968). This rule does not apply to the facts of the instant case, however.

In both *Baker v. Drake*, 53 N.Y. 211 (1873) and *Mayer v. Monzo*, 221 N.Y. 442, 117 N.E. 948 (1917), cases relied upon by appellants, it was alleged that stockbrokers sold their principal's stock without authorization. The owners of the stock were holding these securities, hoping to realize a profit from their sale. *Baker v. Drake, supra*, 53 N.Y. at 216. The *Baker* court explained the theory on which damages would be awarded when stock held for this purpose was converted.

If, upon becoming informed of the sale, he desired further to prosecute the adventure and take the chances of a future market, he had the right to disaffirm the sale and require the defendants to replace the stock. If they failed or refused to do this, his remedy was to do it himself and charge them with the loss reasonably sustained in doing so. The advance in the market price of the stock from the time of the sale up to a reasonable time to replace it, after the plaintiff received notice of the sale, would afford a complete indemnity.

*Baker v. Drake, supra*, 53 N.Y. at 217.

The situation presented in the instant case is wholly different from the circumstances existing in *Baker* and its progeny. Here, appellants never owned any common stock of Boeing and do not claim to have purchased any. *See Hartford Accident & Indemnity Co. v. Walston & Co., supra*, 22 N.Y.2d at 673, 291 N.Y.S.2d 366, 238 N.E.2d 754. In reality, appellants are asking us to treat them as if they were owners of the stock on the cut-off date, March 29, and to speculate that they would have sold these shares at the highest price reached within a reasonable time thereafter. Such a theory of damages was specifically rejected in *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145, 320 N.Y.S.2d 225, 269 N.E.2d 21 (1971).

In our former opinion we held that appellants' right to damages arose out of their contract with Boeing. *Van Gemert v. Boeing Co., supra*, 520 F.2d at 1383. We are confident that, faced with the facts presented here, the New York courts would apply a breach of contract theory of damages, resulting in the Boeing stock being valued as of the cut-off date, March 29, 1966. In *Simon v. Electrospace Corp., supra*, the defendant breached its contract to deliver shares of stock to the plaintiff for services rendered. The *Simon* court stated:

The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach . . . .. The rule is precisely the same when the breach of contract is nondelivery of shares of stock . . . .. Plaintiff was never the owner of the stock of Electrospace just because defendant breached its contract to deliver the shares. That breach and the loss caused was fixed and determined in 1967 . . . [and that was] the time when the value to him of defendant's performance was to be measured. It was then that plaintiff was to be made whole and not at some future time never specified in the agreement. (Citations omitted).

*Simon v. Electrospace Corp., supra*, 28 N.Y.2d at 145, 320 N.Y.S.2d 225, 232–233, 269 N.E.2d 21, 26. The cases dealing with converted stock were referred to by the *Simon* court but did not control, because there, as here, the plaintiff did not own the stock. Boeing had the right to call the debentures as of March 29, 1966. However, it breached its contract with the debenture holders by failing to give them reasonably adequate notice of its action, thereby precluding them from participating in the call. We hold that the breach occurred on March 29, 1966; and, for the purpose of computing damages herein, the Boeing stock should be valued as of that date.

New York law also controls on the issue of pre-judgment interest. Appellants contend that the awarding of interest is mandatory under N.Y.C.P.L.R. § 5001(a). Boeing, on the other hand, asserts that our previous decision in effect reformed the contract between it and the debenture holders. Because reformation is an equitable doctrine, see *Brandwein v. Provident Mutual Life Insurance Co.*, 3 N.Y.2d 491, 494, 168 N.Y.S.2d 964, 146 N.E.2d 693 (1957), Boeing argues that the awarding of interest was discretionary with the District Court.

■ Boeing's reliance on the doctrine of reformation is misplaced. In our prior decision, we did not rely on a mutual mistake between the parties in expressing the terms of their agreement. Neither did we find unilateral mistake on the part of the debenture holders occasioned by Boeing's fraud. We did find significant, however, the fact that the debentures did not explicitly set forth the type of notice which appellants could expect if Boeing decided to call the bonds. Without such a declaration, we held as a matter of law that appellants were entitled to expect that Boeing would employ a method of notification reasonably calculated to inform the debenture holders of the call. In doing so, we merely applied the settled principle, "that in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933). Simply stated, every contract contains the implied requirement of good faith and fair dealing. Boeing was found liable therefore because it breached its contract with appellants, and damages were awarded. Under N.Y.C.P.L.R.

§ 5001(a), an award of interest from the date of the breach, March 29, 1966, is mandatory. See *Spang Industries, Inc. v. Aetna Casualty & Surety Co.*, 512 F.2d 365, 371 (2d Cir. 1975).[1]

■ On March 30, 1966, $1,544,300 in principal amount of unregistered debentures had not been converted. Therefore the class as a whole suffered damages of $3,289,359, exclusive of pre-judgment interest. This sum with interest represents the maximum amount to be distributed should all possible class members be identified and file proofs of claim. On appeal, certain appellants raise the question of whether class members who file proper proofs of claim should be entitled to receive on a pro rata basis any portion of the damage award which remains unclaimed. Boeing, of course, contends that the unclaimed money should be returned to the corporation.

We see no reason to change our position, firmly stated in *Eisen v. Carlisle & Jaquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated and remanded on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), disallowing a "fluid class" recovery such as sought by appellants. Although, in *Eisen*, the fund created by the unclaimed damages was to be used to benefit individuals who were arguably not members of the class, there is no difference in concept between the relief at issue in that case and the relief requested here, which in effect seeks distribution of the unclaimed portion to a "next-best" class. Moreover, there is even less to recommend appellants' proposal than the similar relief suggested in *Eisen*.[2]

The problems inherent in appellants' proposal are readily apparent.

[T]his method expressly contemplates that silent class members will not receive

---

1. On remand, the District Court should compute interest at the various legal rates applicable under New York law during the period from March 29, 1966 to the date that judgment is entered. *Spang Industries, Inc. v. Aetna Casualty & Surety Co.*, *supra*, 512 F.2d at 372; *see Kaufman v. Chase Manhattan Bank National Association*, 370 F.Supp. 279, 280 (S.D.N.Y. 1974).

2. In *Eisen* the class consisted of those who had bought or sold odd lots on the New York Stock Exchange in the period from May 1, 1962 through June 20, 1966. The undistributed funds were to be used, "for the benefit of all odd-lot traders by reducing the odd-lot differential 'in an amount determined reasonable by the court until such time as the fund is depleted'". *Eisen v. Carlisle & Jaquelin*, *supra*, 479 F.2d at 1011.

any compensation, even indirectly. The claims of the silent class members would be expropriated and a windfall might result for those who appeared and collected their share of the damages. Consequently, this procedure might encourage the bringing of class actions likely to result in large uncollected damage pools. It also raises serious questions as to the adequacy of representation where the interests of the named plaintiffs lie in keeping the other class members uninformed. In sum, the deficiencies of this method of distribution make it a generally unacceptable alternative. (Footnote omitted).

Note, *Damage Distribution in Class Actions: The Cy Pres Remedy*, 39 U.Chi.L. Rev. 448, 453 (1972). Appellants argue, however, that they should receive the unclaimed funds to defray the legal expenses of the claiming members of the class; in essence, that Boeing should pay, at least in part, their legal fees and disbursements. The simple answer to this argument is that, what appellants may not gain directly, *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), they may not gain indirectly, and certainly not through such an imperfect vehicle as they have proposed. Without regard to the constitutionality of a "fluid class" award, *Eisen v. Carlisle & Jaquelin, supra*, 479 F.2d at 1018, the circumstances here simply do not call for this extraordinary remedy.

The case is remanded to the District Court for entry of a judgment in accordance with this opinion.