Lawrence J. BEECHER et al., Plaintiffs,

v.

Charles R. ABLE et al., Defendants.

Harry H. LEVY, Plaintiff,

v.

DOUGLAS AIRCRAFT COMPANY, INC., et al., Defendants.

Lillian GOTTESMAN, Plaintiff,

v.

A. V. LESLIE et al., Defendants.

Lawrence KOBRE, Plaintiff,

v.

Wellwood E. BEALL et al., Defendants.

Mac HERBST et al., Plaintiffs,

v.

Charles R. ABLE et al., Defendants.

Nos. 66 Civ. 3471, 66 Civ. 3382, 66 Civ. 3775, 68 Civ. 4141 and 66 Civ. 3216.

United States District Court, S. D. New York.

June 23, 1977.

Pomerantz, Levy, Haudek & Block by Abraham L. Pomerantz, Robert B. Block, New York City, for class plaintiffs.

White & Case by Haliburton Fales, 2d, Sharon E. Grubin, New York City, for defendant McDonnell Douglas Corp.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On February 11, 1976 the parties entered into a Stipulation of Settlement which was subsequently approved by this court on August 25, 1976. That settlement provided that Douglas would establish a fund in the amount of $5 million to be paid to the three plaintiff classes in accordance with the settlement plan. On November 22, 1976 Douglas notified the court that the number of claims filed had fallen substantially below expectations. On January 17, 1977 this court ordered the parties to make further attempts through media advertising to locate additional claimants. This advertising elicited only a relatively small number of additional claims (approximately $.3 million in addition to the previous claims which totalled approximately $1 million).

Plaintiffs now move that the $5 million (less expenses and fees) be reallocated among the three classes in light of the paucity of claims. Defendant Douglas cross moves for a limited reallocation. It also requests that a substantial portion of the settlement revert to Douglas.

There are no allegations of fraud or misrepresentation made by any party. Rather, Douglas claims that in agreeing to the settlement, it had no idea that so few claims would be filed. Furthermore, in light of the parties' mutual mistake says Douglas, the court should revise the settlement.

The court finds that there was no mutual mistake. At the outset, plaintiffs heartily deny that they did not foresee the possibility of so few claims.[1] The plaintiffs assert that this risk was one which both parties

---

1. Plaintiffs' Brief in Support of the Settlement and Allocation Plan stated (pp. 12–13):

Experience in many other class settlements teaches that, regrettably but inevitably, there are a substantial number of "no-shows" when it comes to the filing of claims. Attrition of potential claims will be especially heavy in this case after a ten-year lapse, despite the extensive notice that has been ordered and given; and a showing of as many as 58% of Class 3 claims is highly unlikely. (Footnote omitted)

accepted by the terms of the contract. The settlement agreement explicitly notes that no part of the settlement shall revert to Douglas in the event that fewer claims are filed than anticipated. (Para. 8)

The Settlement Notice (p. 5) states, in pertinent part:

> The entire amount of the Fund allocated to each class will be distributed among members of the applicable class, notwithstanding that distributions may exceed allowed claims. . . . In no event will any part of the Fund revert to Douglas.

In connection with this provision in the Notice, the Allocation Plan contains the following language (pp. 8–9):

> Each Class's allocation from the Fund . . . will be distributed *pro rata* according to the allowed claims of members of the Class. Distributions may be less or more than allowed claims, depending upon the total claims filed by members of each Class and allowed against the Fund. In case the allocation from the Fund to one or more Classes exceeds the total allowed claims of members of such Class or Classes, the excess will be redistributed in accordance with the following:
>
> \*   \*   \*   \*   \*   \*
>
> C. Excess in all Classes: Pool all the excesses and redistribute them, 51/100ths to Class 1, 9/100ths to Class 2 and 40/100ths to Class 3.

▮▮▮ Thus, the possibility of fewer than all claims was a risk which Douglas expressly took when it agreed to a *fixed* settlement figure as opposed to paying separately for each claim filed. Although Douglas may have been mistaken as to its estimate of the number of claims that would be filed, "there must be excluded from consideration mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk. With respect to any matter not made a basic assumption of the contract, the parties take their chances." 13 Williston on Contracts, 3d Ed., § 1543, p. 75; *Wright & Pierce v. Town of Wilmington, Mass.*, 290 F.2d 30, 32 (1st Cir. 1961).

Uncertainty as to the number of claimants was specifically dealt with in the agreement. Douglas is now complaining that, since it did not have the foresight to estimate that the actual number of claimants would be *this* low, it should be relieved from its bad bargain.

It does seem true, as Douglas argues, that the parties did not contemplate that the number of claims would be as low as it is. This is evidenced by the fact that the plaintiffs are again in this court requesting that the Allocation Plan be amended to cover this "unexpected" event—"unexpected" in the sense that the Allocation Plan did not provide for this low turnout. But this low turnout is merely a question of degree. The parties specifically dealt with the uncertain turnout of the potential claimants. If Douglas' poor prediction were the type of "mistake" that could serve as the basis of reformation or rescission, then there would be no such thing as a "bad deal". The courts would be inundated with persons seeking to avoid the unpleasantries of their bad bargain.

This is a case where an arm's length agreement was painstakingly reached after years of litigation between highly experienced, highly sophisticated counsel on both sides. In such circumstances, the settlement agreement should not lightly be set aside merely because subsequent developments have indicated that the bargain is more beneficial to one side than to the other. *Bernstein v. Brenner*, 320 F.Supp. 1080, 1086 (D.D.C.1970); *Strange v. Gulf & South American Steamship Co.*, 495 F.2d 1235, 1237 (5th Cir. 1974).

Douglas asks the court to reform the settlement to meet this unexpected situation. However, reformation is an extraordinary remedy which is used to change a contract to express the parties' true intentions at the time when the contract was written. 13 Williston on Contracts, 3d Ed., § 1547, pp. 111, *et seq.*; *Schongalla v. Hickey*, 149 F.2d 687, 690 (2d Cir.), *cert. denied*, 326 U.S. 736, 66 S.Ct. 46, 90 L.Ed. 439 (1945); *Brubrad Co. v. U. S. Postal Service*,

404 F.Supp. 691, 693 (E.D.N.Y.1975), *aff'd* 538 F.2d 308 (2d Cir. 1976), *cert. denied*, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976). Reformation is inappropriate in this instance since the parties' intent on the question is already properly expressed in the settlement.

Nor will rescission be granted. Rescission is the remedy when the parties have made a mutual mistake as to a fact or assumption which goes to the heart of the agreement. 13 Williston on Contracts, 3d Ed., § 1544, pp. 94, *et seq.*; *Southern Agency Co. v. LaSalle Casualty Co.*, 393 F.2d 907, 914 (8th Cir. 1968). There was no such mutual mistake. Even if the parties mistakenly estimated the number of claimants, this error would only be a matter of degree and would not go to the "heart of the agreement." Thus, rescission is inappropriate.

■ Douglas relies on a recent Second Circuit case to support its contention that the balance of the settlement fund should not be distributed among those who have already filed claims. *Van Gemert v. The Boeing Company*, 553 F.2d 812–816 (1977). In that case, the Court of Appeals determined that the total damages suffered by the class equalled $3,289,359 after a trial in the District Court. A question was raised on appeal as to "whether class members who file proper proofs of claim should be entitled to receive on a pro rata basis any portion of the damage award which remains unclaimed." (At 815) The Court rejected this "fluid class" recovery on the ground that this procedure might encourage actual claimants to refrain from informing other potential claimants in this class. The result would be that the damages awarded to these silent members would be expropriated by the other members of that class who would thus receive windfalls.

*Van Gemert* is distinguished from the case at bar. The most crucial distinguishing factor is that here, unlike in *Van Gemert*, the settlement fund is not the result of a court order or trial. It was part of a voluntary settlement agreement among the parties. Douglas expressly contracted

away its right to a return of any part of the fund which was not claimed. Douglas accepted the risk that the number of claimants would be small in the same way as it would have benefited from the fact that the number of claimants might have exceeded the parties' expectations. Another distinction between this case and *Van Gemert* is that in *Van Gemert*, the "fluid recovery" might result in a windfall to the class. In the instant case, both parties agree that increasing the recovery by Classes I and II is fair. The award of interest to these classes can not be considered a windfall.

■ The most serious question is whether Class III will receive a windfall under the new plan proposed by plaintiffs. As previously noted, the parties have agreed to the settlement with the understanding that neither would appeal the court's determination that Class III is entitled to $30 per $1000 principal of the debentures. Quite clearly, this court's determination is not the last word on the subject. The parties should be entirely free to use this court's decision as a guide to their settlement. But that decision is only a guide; it should not be binding on the plaintiffs who now obviously got the better of the bargain with Douglas. *See, First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972) ("a contract of settlement, *if valid in itself*, is final, and is to be sustained by the court without regard to the validity of the original claim . . ." (emphasis in original)).

The Court in *Van Gemert* was also concerned with the possibility that the "fluid recovery" would encourage claimants to remain silent. This does not appear to be an important factor in this case where two sets of notices were mailed to the classes. The paucity of responses is undoubtedly due mainly to the age of this case and not due to the fact that a "fluid recovery" was a possibility when the settlement agreement was approved by this court.

Finally, Douglas' reliance on *Van Gemert* is a curious stance at this point, because if that case does control the situation at bar, then the settlement was void from its incep-

tion. The Settlement Agreement has *always* provided for a "fluid recovery", since, by its terms, no portion of the $5 million would ever revert to Douglas despite the number of claimants. Douglas is apparently saying that the recovery under the present circumstances has turned out to be *too* fluid. But *Van Gemert* says that a fluid recovery is either acceptable or it is not. This court does not believe (and Douglas does not seem to be arguing) that that case should have prevented the approval of the settlement. If not, then there is no basis for distinguishing between the "fluid recovery" as contemplated by the Settlement Agreement and the "fluid recovery" which plaintiffs now ask the court to approve.

■ The parties do not dispute the fact that this court has the power to alter the way in which the settlement fund will be distributed at this point. This court's judgment entered on August 25, 1976 provides that it "reserves jurisdiction over the effectuation of the settlement, including all matters and controversies relating to processing and fixation of claims . . ." (Para 5) *See also, Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972).

■ Both parties agree that the payments to both Class I and Class II should be doubled. The court will thus approve this proposal. Plaintiffs also request that these two classes receive interest on their claims. Douglas objects to this proposal, but considering this court's ruling that no part of the fund shall revert to Douglas, Douglas has little cause to complain. Furthermore, the court finds the award of interest in the peculiar circumstances of this case to be entirely reasonable. Thus, Classes I and II are entitled to interest from date of suit (as has already been awarded to Class III).

■ Finally, plaintiffs ask that the balance of the settlement fund revert to Class III after paying Class I and II claimants. This will increase each Class III member's recovery from $30 to an estimated maximum of $160 per $1000 debenture. The court finds that this aspect of the plan is also fair and reasonable under the special circumstances of this case. Although the court found that Class III suffered damages of $30 per debenture, this determination could have been very substantially increased on appeal, as Douglas apparently contemplated at that juncture. *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 516 F.2d 172 (2d Cir. 1975), *rev'd on other grounds*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). There was evidence introduced on the trial that the damages may have been as high as $470 per $1000 debenture.

In conclusion, plaintiffs' plan for the reallocation of the settlement fund is approved in its entirety.

■ Plaintiff, in addition to its motion to amend the Allocation Plan, requests that the Claim Processor (Laventhol & Horwath) receive an additional $10,000 compensation. Laventhol & Horwath claim that, due to the unanticipated amount of paperwork involved in the processing of the first group of claims, its costs exceeded its agreed-upon fee of $25,850 by $6,025. In addition, it says that it incurred added expenses of $3,975 in processing the second group of claims which were precipitated by this court's order of January 17, 1977 requiring new advertisements. Douglas does not oppose this payment, but under today's holding, the claimants and not Douglas will have to pay the additional fee (Stipulation of Settlement, para. 6).

The Claim Processor's request for $6,025 is denied. Like Douglas, it made a fair estimate of its costs and took the risk that the paperwork would exceed its expectations. Had the paperwork proved minimal, it would have reaped the benefits of that fortuity.

The claim for $3,975 is denied as well. The court recognizes that its order of January 17, 1977 may have caused the Claim Processor to incur additional expenses for which it is entitled to be compensated. But the court notes that the $25,850 fee originally awarded to the Claim Processor was intended to cover claims potentially equaling roughly $5.5 million (Douglas' Memo-

randum of Law in support of its motion to modify the judgment, at 5). The actual amount of claims was only 24% of the $5.5 million estimate ($1,334,198), yet the Claim Processor seeks an *additional* 39% compensation to process this small number of claims. The court cannot, in good conscience, award this amount from the settlement fund.

Submit order on notice.