William R. VAN GEMERT et al., Plaintiffs,

v.

The BOEING COMPANY et al., Defendants.

No. 66 Civ. 1820 (IBC).

United States District Court, S. D. New York.

May 28, 1981.

Rosenthal & Schanfield, Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., Chicago, Ill., Irving Steinman, Kass, Goodkind, Wechsler & Labaton, Nathan, Mannheimer, Asche, Winer & Friedman, Moses & Singer, New York City, for plaintiffs; Alex Elson, Aaron S. Wolff, Lowell Sachnoff, Chicago, Ill., Stuart D. Wechsler, Norman Winer, Felix A. Fishman, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendant; S. Hazard Gillespie, New York City, of counsel.

George J. Solleder, Jr., New York City, Special Master.

## OPINION

IRVING BEN COOPER, Senior District Judge.

The six petitions for attorneys' fees and disbursements before us bring closer to finality a long and hard fought battle stretching over fourteen years.[1] *Van Gemert v. Boeing Co.*, No. 66 Civ. 1820 (S.D. N.Y., consolidated on October 4, 1966); *Van Gemert v. Boeing Co.*, 520 F.2d 1373 (2d Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975); *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977); *Van Gemert v. Boeing Co.*, 573 F.2d 733 (2d Cir. 1978); *Van Gemert v. Boeing Co.*, 590 F.2d 433 (2d Cir.) (en banc), cert. granted, 441 U.S. 942, 99 S.Ct. 2158, 60 L.Ed.2d 1043 (1979); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

Petitioners have represented the plaintiff class of debenture holders since 1966. After extensive discovery, pretrial stipulations as to the relevant facts (some 55 pages) and a three-day trial on the merits, the consolidated complaint was dismissed by Judge Ryan. The Second Circuit Court of Appeals reversed the dismissal and ordered that judgment be entered for the plaintiff class on an implied reasonable notice theory. Subsequently, defendant, the Boeing Co., was denied certiorari in the Supreme Court.

On remand, Judge Ryan refused to award prejudgment interest to the class and petitioners again went before our Circuit's Court of Appeals. The Court of Appeals held that prejudgment interest should be awarded to the plaintiff class. On this second remand, Judge Ryan additionally ordered that attorneys' fees be shared by the plaintiff class (claiming as well as nonclaiming members) on a pro rata basis.

The defendant, Boeing, appealed that portion of Judge Ryan's order relating to pro rata sharing of attorneys' fees. Defendant argued that because it had a colorable interest in the unclaimed portion of the judgment fund, any pro rata sharing which included the unclaimed portion of the judgment fund would effectively tax plaintiffs' attorneys' fees to defendant. The Second Circuit panel agreed, only to be reversed after petitioners sought and were granted *en banc* reconsideration.

The novelty of this attorneys' fees issue was taken up by the United States Supreme Court when it granted defendant's petition for certiorari. The Supreme Court affirmed Judge Ryan's order on the theory that unclaiming class members would have to share in the costs of a fund in which they had at least an equitable interest.

Petitioners' separate statements seek reimbursement for the nearly fourteen thousand hours of work in representing the plaintiff class of debenture holders. The aggregate request amounts to almost five million dollars[2] in attorneys' fees and fifty thousand dollars in disbursements.

Our Circuit has clearly set forth the considerations to be employed for determining just and adequate attorneys' fee awards in *City of Detroit et al. v. Grinnel et al.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnel I*") and *City of Detroit et al. v. Grinnel et al.*, 560 F.2d 1093 (2d Cir. 1977) ("*Grinnel II*").

■ "The starting point of every fee award ... must be a calculation of the attorney[s'] services in terms of the time [they have] expended on the case." *Grinnel I, supra*, 495 F.2d at 470. The calculations made by petitioners are, of course, subject to our own determination of reasonableness. *Steinberg v. Carey*, 470 F.Supp. 471, 479 (S.D.N.Y.1979) (Weinfeld, J.); *Seigal v. Merrick*, 619 F.2d 160, 164, n.9 (2d Cir.

---

1. We too make no comment with respect to the disposition of the unclaimed portion of the judgment fund. *Van Gemert et al. v. Boeing Co. et al.*, 590 F.2d 433, 440 n.7 (2d Cir. 1978); *Boeing Co. v. Van Gemert et al.*, 444 U.S. 472, 482 n.8, 100 S.Ct. 745, 751 n.8, 62 L.Ed.2d 676 (1980). But see Golbey, *Attorney's Fees, Unclaimed Funds, And Class Actions: Application*

*of the Common Fund Doctrine*, 48 Fordham L.Rev. 370 (1979).

2. In an effort to aid us in our judicial function, four petitioners have agreed that it would be "... appropriate and reasonable that an aggregate of $3,500,000 be awarded to all counsel ...." Letter to Chambers, January 19, 1981, p. 1.

1980). We have thoroughly read the applications, amended applications, affidavits, briefs, reply briefs and numerous letters of petitioners and have relatively minor cavils with their inclusion of hours.

## PREPARATION OF FEE APPLICATION HOURS

■ This Circuit's policy is clear. "Services performed in connection with the fee application are necessary to the attorney[s'] recovery. They benefit him, for without them, the attorney cannot ... recover. But such services do not benefit the fund— they·do not create, increase, protect or preserve it.... There being no benefit to the fund from services performed by [petitioners] in connection with their fee application[s], there should be no attorneys' fee award for those services." *Grinnel II, supra*, 560 F.2d at 1102 (quoting *Lindy Bros. Builders Inc. v. American Radiator & Supply Sanitary Corp.*, 540 F.2d 102, 111 (3d Cir. 1976) (*en banc*)).

We recognize that at the time of filing of their original applications in late March, 1977, petitioners did not have the benefit of the subsequent *Grinnel II* decision. Nevertheless, we shall deduct 170 hours (approximation) from the petitioning firm of Kass, Goodkind, Wechsler, and Labaton, chargeable at partner rates and 150 hours (approximation) from the petitioning firm of Norman Winer, chargeable to Norman Winer for time included in preparation of their respective fee applications.[3] Application, Kass firm, verified 7–29–77, Appendix No. 1; Supplemental and Amended Application, Kass firm, verified 3–31–80, Exh. D; Affirmation, Winer, verified 8–2–77, par. 84; Petition, Winer, verified 3–28–80, Exh. A.

## INDIVIDUAL REPRESENTATION

■ On December 29, 1980, the petitioning firm of Moses & Singer made application for attorneys' fees and disbursements.

Petitioners seek compensation "... for work actually and necessarily performed by [petitioners] ... in its representation of [their client,] Mr. Bonnard ...." Petition, Fishman, verified 12–26–80, par. 4. The petition must be, and hereby is, denied in all respects.

These petitioners have done nothing to benefit the plaintiff class. As the Supreme Court stated, "... this Court has recognized consistently that a litigant or *a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.*" *Boeing Co., supra*, 444 U.S. at 478, 100 S.Ct. at 749 (emphasis added); See *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

Additionally, we note that this petition is devoid of the specific factors that *Grinnel I, supra* and *Grinnel II, supra*, demand when making application for attorneys' fees and disbursements.

## INVESTIGATION OF CLAIMS

■ The earliest common denominator among petitioning counsel was that each represented clients who had claims as debenture holders against Boeing. In fact, before consolidation, each petitioner (except Moses & Singer) filed a complaint on behalf of its clients. We are aware that before and after filing a complaint here, these attorneys had to do a certain amount of non-legal research necessary to analysis of the claims. For example: Making inquiries of the Securities and Exchange Commission; making inquiries of the New York Stock Exchange; gathering publicly available financial data on the Boeing Co. et al. from such sources as Standard & Poors and Dun & Bradstreet.

---

**3.** We note that petitioner Steinman originally included 100 fee application hours in his total request, Application, Steinman, verified July 26, 1977, Exh. A, but later excluded them. Amended Application, Steinman, verified March 28, 1980, p. 15. The petitioning firm of

Sachnoff, Schrager, Jones, Weaver and Rubenstein also originally included 15 fee application hours in its total request, Application, Sachnoff firm, verified July 28, 1977, p. 1 FN., but also deducted them. Amended Application, Sachnoff, verified March 28, 1980, Exh. A.

We find that these hours spent are reasonable, useful, and adequately accounted for in most petitions. Petition, Elson, Lassers & Wolff, verified 7–26–77, Exh. A; Application, Sachnoff, Schrager, Jones & Weaver, Ltd., verified 7–28–77, p. 8 & Exh. A; Application, Kass, Goodkind, Wechsler & Gerstein, verified 7–28–77, Appendix No. 1; Affirmation, Winer, verified 8–1–77, pars. 12–15, Appendix time sheets.

However, despite abundant opportunity to reconstruct, the time for which has passed, petitioner Steinman has not given us an adequate basis for including that portion of his application which relates to his investigation time in our award. Application, Steinman, verified 7–26–77, p. 3–4, Exh. A. We recognize there are occasions (like *Grinnel II, supra*, 560 F.2d at 1102) where our Circuit has allowed compensation for hours that were *reconstructed* which were considered fair and reasonable. But here, we are unwilling to simply ignore the interests of the plaintiff class in the judgment fund and the aforementioned directives. Rather, we are constrained to, and hereby do, disallow this almost entirely unsupported estimate of 250 hours chargeable to Irving Steinman.[4] *In re Hudson & Manhattan Railroad Co.*, 339 F.2d 114, 115 (2d Cir. 1964); *In Re Wal-feld Co.*, 345 F.2d 676, 677 (2d Cir. 1965).

## DUPLICATION OF EFFORTS

■ There are statements contained in all of these applications and correspondence to the Court, which relate to the issue of duplication of effort, with emphasis given to pursuit of theories which ultimately were not the basis for recovery. Application, Kass firm, verified 7–28–77, pp. 12–13, 17; Amended Application, Kass firm, verified 3–31–80, pp. 7, 10; Application, Sachnoff firm, verified 7–28–77, pp. 13, 18, 20, 21;

Supplemental Application, Steinman, verified 3–28–80, p. 14; Affirmation, Winer, verified 7–28–77, p. 58, Appendix No. 1, pp. 41–42. We recognize that resolution of these unproven and general statements is not the sine qua non to determination of these fee applications, *e. g. Grinnel I, supra*, 495 F.2d at 473. We have thoroughly read each of these statements and are unimpressed. Moreover, on the cold record before us we are unable to conclude that the same results here would have ensued had only one theory of liability been advanced at each stage of this litigation. "Every lawyer, indeed every judge, has pursued blind alleys that initially seemed reasonable or even professionally obligatory. To reward only the pursuit of a successful theory . . . undercompensates the inevitable exploratory phases of litigation, and may also invite overly conservative tactics or even prohibit some high-risk but deserving actions entirely. . . ." *Seigal, supra*, 619 F.2d at 165.

## CHARGEABLE HOURS

Each petitioner has set forth (except as noted, *supra*) every hour of work expended on this case (see Appendix I), the type of work performed and specifically by whom the work was performed. After having carefully considered all the applications, we conclude that the following number of hours for the firm as indicated are reasonable, substantiated under *Grinnel I, supra*, and *Grinnel II, supra*, and deserving of payment:

| | |
|---|---|
| Elson Firm: | 479 |
| Kass Firm:[5] | 5572.5 |
| Nathan Firm: | 4485 |
| Sachnoff Firm: | 1152.75 |
| Steinman & associates: | 1934.5 |

---

4. We recognize that there are other estimates of *de minimis* unrecorded time included in the other applications. *E. g.* Petition, Winer, verified March 31, 1980, par. 60; Petition, Elson firm, verified July 26, 1977, Exh. B., par. 5; Affidavit, Sucharow, verified July 26, 1977, p. 2. These reconstructed hours are reasonably accounted for and are approved.

5. Petitioner has erroneously increased the number of hours requested since its March 31, 1980 Amended Application. We are unaware that any compensable activity has taken place since well before the date of the Amended Application.

\*    \*    \*    \*    \*    \*

## HOURLY RATE

█ "Once the District Court ascertains the number of hours that the attorney and his firm spent on the case, it must attempt to value that time. Valuation obviously requires some fairly definite information as to the way in which that time was spent (discovery, oral argument, negotiation, etc.) and by whom (senior partners, junior partners or associates). Once this information is obtained the easiest way for the court to compute value is to multiply the number of hours that each lawyer worked on the case *by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation."* Grinnel I, supra, 495 F.2d at 471 (emphasis added).

*Grinnel I* does not include a discussion of the need to account for when the services were actually performed in determining an "hourly rate." When some services were performed more than 14 years ago, as here, *Grinnel I* does not instruct the District Court whether to apply the historic hourly rate (changing from time to time) or the current hourly rate for evaluation of those services. Cases are legion under either approach. 6 Class Action Reporter 82 et seq. (1980); A. Miller, Attorneys' Fees in Class Actions pp. 78–100 (Federal Judicial Center, 1980).

The use of the current rate takes into account inflation and delay in payment in cases where services have been rendered over a long period of time. Under the historic rate (or contemporaneous time) approach, inflation and delay in payment have been accounted for by a variety of methods, including the use of the Consumer Price Index; an inflation factor approximated by the prevailing interest rate; a straight percentage increase of the "Lodestar" (basic fee); a straight lump sum increase of the Lodestar; or the use of part of a multiplier when applied to the Lodestar. *Id.*

We have determined that in an effort to compensate at a reasonable rate and to take into account the effects of delay and inflation, the current 1981 hourly rates will be applied here.[6]

Petitioners have raised the issue of what the current rate means. In light of the applicable precedents, the current rate to be applied here is the reasonable hourly rate charged in 1981 for services rendered by attorneys whose skill (as well as reputation and status) is similar to the skill (reputation and status) of the attorneys who actually performed the services at the time they were performed. For example: A junior associate, with one year's experience who performed one hour of work in this case in 1966, will be paid at the reasonable hourly rate which the firm charges *today* for an associate with one year's experience. We reject, therefore, the proffered definition that the current rate should reflect the successful development of that associate from the time the services were rendered until today, unrelated to the specific services they performed here. It is *not* our intention to determine this current rate for each of petitioners' preceding fourteen work years. Rather, we prefer to evaluate services in more manageable, generic terms. *E. g. Grinnel I, supra,* 495 F.2d at 473 (quoting *Lindy Bros. v. American Radiator,* 487 F.2d 161, 167, 170 (3d Cir. 1973)).

Therefore, we have set forth in "Appendix I" attached hereto, our determination of a reasonable current hourly rate as well as the Lodestar fee calculation for each petitioning firm. We point out that petitioners' estimates of their own hourly rates where their practices provide for it are helpful but not binding.[7] *E. g. Steinberg, supra,* 470 F.Supp. at 479.

\*    \*    \*    \*    \*    \*

---

**6.** All petitioners (except Moses & Singer) have agreed that use of current rates in this case are appropriate. Letter to Chambers, December 5, 1980, Winer.

**7.** Petitioners have not identified how much of their gross fees are on a noncontingent basis and no evidence has been adduced that such standard rates are in fact realized on noncontingent matters.

## CALCULATION OF MULTIPLIER

■ "It is only after such a [Lodestar fee] calculation that other, less objective factors can be introduced into the calculus." *Grinnel I, supra*, 495 F.2d at 471. As more fully set forth below, risks of litigation, quality of performance, novelty and complexity of the substantive issues and to a lesser extent, the benefit to the plaintiff class, all must be taken into account here.

The inherent subjectivity associated with increasing the Lodestar fee for risks of litigation, etc. demands that we be mindful of numerous policy considerations. For example: Fee awards under the common fund doctrine are proper only "if made with moderation and a jealous regard to the rights of those who are interested in the fund." *Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881); "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so." *Grinnel I, supra*, 495 F.2d at 469; "... too little judicial regard for the interests of the benefited class can easily result in lesser recoveries for intended beneficiaries because of massive fees for enterprising attorneys." *Grinnel II, supra*, 560 F.2d at 1098; "[i]n making its decision, the district court [is] to act 'as a fiduciary who must serve as a guardian of the rights of absent class members.'" *Id.* at 1099 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)).

■ Petitioners have suggested that "multipliers" ranging from two to four times the Lodestar fee are appropriate here for taking into account the subjective factors mentioned above.[8] We agree that some reasonable increase in the Lodestar fee is appropriate here even though we recognize that "... [petitioners have] received an otherwise reasonable compensation for [their] time from the lodestar figure alone...." *Grinnel II, supra*, 560 F.2d at 1099.

Since reassignment of this case to us on November 27, 1978,[8a] we have been able to observe the quality of petitioners' work with regard to these pending fee applications. Each has been thorough, articulate, conscientious and a tremendous aid to our judicial function. Their credentials have equally impressed us as well. Although we have not had the benefit of any further first hand knowledge of the skills that these petitioners have displayed throughout the course of this litigation, the record is not silent.

In our Circuit's first opinion reversing the dismissal of the complaint after trial, Judge Oakes commented that, "[m]ost of the facts are not in dispute; indeed, we commend the parties, and the court below, for agreeing to a 59-page statement as to facts; incorporating some 55 exhibits, and to what certain witnesses would testify if called at trial." *Van Gemert, supra*, 520 F.2d at 1375 (2d Cir. 1975) (Oakes, J.).

Again in 1978, when this case came before our Circuit's panel on the issue of pro rata sharing of attorneys' fees and disbursements by the entire plaintiff class (includ-

---

**8.** Petitioners have been helpful in directing our attention to cases supporting such a determination. *In re Water Heater Antitrust Litigation* No. 379 (E.D.Pa. Aug. 8, 1980); *Greenfield, et al. v. Mattel, Inc., et al.*, No. CV–73–515, (D.C. Cal. Aug. 12, 1977); *Gilman v. Mohawk Data Sciences Corp., et al.*, No. 71 Civ. 4742 (S.D. N.Y. May 3, 1976); See also Combined Memoranda on Current Fees, Winer, January 12, 1981; Reply Memorandum, Winer, January 12, 1981; Memorandum in Support of Plaintiffs' Fee Application, Kass firm, July 29, 1977; Answering Memorandum, Kass firm, December 23, 1980; Supplemental and Reply Memorandum, Kass firm, March 31, 1980.

**8a.** While he was desperately ill, we took this matter from the late highly esteemed and beloved former Chief Judge Sylvester J. Ryan of this Court. During the course of this extensive litigation, Judge Ryan had very frequent conferences in chambers with counsel and was afforded ample opportunity to observe and estimate the quality of their professional performance. Our determination here is based exclusively on the study of a large number of heavily packed cartons of legal documents, memoranda, correspondence, etc., etc.

ing non-claiming plaintiff class members), Judge Oakes stated: "Class actions often are valuable tools for the individual plaintiff seeking justice against a defendant whose resources enable it to obtain the highest-paid lawyers to engage in such extensive discovery and other litigation techniques that one, two or three plaintiffs otherwise could never afford to conduct the lawsuit.... A decade of hard-fought difficult litigation has at last resulted in an award to the debenture holders which, had the original notice been sufficient, would have rightfully been theirs for the asking. In the process, against uphill odds, lawyers for the now successful plaintiffs did an extraordinarily capable job, having even 'made new law' on a complicated set of facts. Thus, criticism against class actions generally or plaintiffs' attorneys' fees in particular falls flat when focused on the case at bar." *Van Gemert, supra*, 573 F.2d at 737 (Oakes, J., dissenting in part).

Still more recently, Judge Ryan remarked that, "[a]fter entry of judgment ... plaintiffs' attorneys filed extensive fee applications. I reviewed those applications and am familiar with the excellent quality of the work performed by plaintiffs' counsel. Plaintiffs' counsel have made new law and have been involved in a trial on the merits and three [now four] appeals to the Court of Appeals. They have not yet received any remuneration for their services to date in the nearly 12 [now 14] years this litigation has lasted. They deserve to be well compensated." *Van Gemert v. Boeing Co.*, No. 66 Civ. 1820, unreported opinion, p. 2 (S.D.N.Y., May 11, 1978).

It was not until July, 1975, almost a full nine years since this litigation commenced, that petitioners secured a judgment in favor of the plaintiff class. Up to that point, petitioners (except Steinman who did not substantially participate in this first appeal) bore the heavy burden of time, expenses, and an earlier dismissal of the complaint after trial. Application, Sachnoff firm, verified 7–28–77, pp. 13, 18, 21; Application, Kass firm, verified 7–28–77, pp. 13, 17; Application, Steinman, verified 7–26–77, pp.

14–15, Exh. A pp. 30–31; *Van Gemert, supra*, 520 F.2d at 1374.

The issues on the first appeal, *Van Gemert, supra*, 520 F.2d 1373, were novel and complex. The substantive decision there was the first time that the Second Circuit found an implied federal civil liability against an issuer of debentures for violation of New York Stock Exchange rules absent bad faith or fraud. *E. g.* Note, *Van Gemert v. Boeing*, 89 Harv.L.Rev. 1016 (1976); Note, *Van Gemert v. Boeing*, 42 Brooklyn L.Rev. 1259 (1976). The precedents at that time suggested that an implied federal civil liability against *members-brokers-dealers* of Stock Exchanges for violation of Stock Exchange rules would only be found in rare and special circumstances. *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 183 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); *Starkman v. Seroussi*, 377 F.Supp. 518, 523–24 (S.D.N.Y.1974) (Weinfeld, J.); *Bush v. Bruns Nordeman & Co.*, No. 72 Civ. 484, (S.D.N.Y. Nov. 8, 1972).

Following the entry of judgment for the plaintiff class after the first appeal, subsequent appeals were taken involving issues which were also complex and uncertain in outcome. The second appeal, *Van Gemert, supra*, 553 F.2d 812, secured for plaintiffs an award of prejudgment interest from March 29, 1966—a decision that has almost tripled the judgment fund to date.

The third appeal, *Van Gemert, supra*, 573 F.2d 733; id. 590 F.2d 433 (*en banc*); *Boeing Co., supra*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676, resulted in an application of the common-fund doctrine and the American rule against taxing the losing party with attorneys' fees so that each member of the plaintiff class (both claiming and nonclaiming plaintiffs) would share in the costs of attorneys' fees on a pro rata basis. Petitioners were successful in "... a case of first impression...." *Van Gemert, supra*, 590 F.2d at 435.

The benefit which the plaintiff class received at each stage of this litigation, as a direct result of petitioners' efforts is clear. As already noted, the judgment fund is

approaching nine million dollars.[9] We recognize the need to de-emphasize the amount recovered as a factor in determining an award for petitioners. *E. g. Grinnel I, supra*, 495 F.2d at 469; *Grinnel II, supra*, 560 F.2d at 1098. Yet we also "realistically [recognize] that the amount of fees must bear a reasonable relationship to actual recovery...." *Steinberg, supra*, 470 F.Supp. at 479.

We have therefore determined based on all the applicable factors that it is reasonable[10] and fair to increase the Lodestar fee calculation for all petitioners (except Steinman) by a multiplier of 1.7. We have decided to increase the Lodestar fee calculation for petitioner Steinman by a multiplier of 1.5. This lower multiplier reflects our determination that petitioner Steinman did not participate in any substantial way in the first appeal which reversed the dismissal of the complaint. These calculations for all petitioners are more fully set forth in "Appendix II," attached hereto.

\*    \*    \*    \*    \*    \*

## DISBURSEMENTS

■ Petitioners have requested reimbursement from the judgment fund for out-of-pocket expenses totalling $49,920. We have carefully reviewed the various itemizations[11] of disbursements presented by petitioners. Petition, Elson firm, verified 7–26–77, Exh. C; Application, Kass firm, verified 7–28–77, Exh. F; Amended Application, Kass firm, verified 3–31–80, Exh. 1; Second Amended Application, Kass firm, verified 11–18–80, par. 3; Application, Sachnoff firm, verified 7–28–77, Schedule B; Amended Application, Sachnoff firm, verified 3–28–80, par. 1; Application, Steinman, verified 7–26–77, Exh. D; Amended Application, Steinman, verified 3–28–80, Exh. B; Supplemental Petition, Nathan firm, verified 3–28–80, Exh. B. We find the itemized expenses[12] reasonable, substantiated and deserving of payment as set forth in "Appendix II."

Accordingly, we direct the special master to give appropriate notice pursuant to Local Rule 5 of the S.D.N.Y.[13] of our disposition; and to fix June 30, 1981 (by 4:00 P.M.) as the date by which any objections thereto must be filed with the Clerk of Court. Thereafter, a date will be set for hearing such objections.

Submit orders accordingly after June 30, 1981.

SO ORDERED.

9. Judge Ryan entered judgment on December 27, 1976 in the amount of $3,289,359. As of December 25, 1980 the judgment fund was $8,736,526.

10. We do not consider reasonable the application of a multiplier to law student and paralegal time logged in this case. Therefore, we have not done so.

11. We find the petitioning firm of Kass, Goodkind, Wechsler & Labaton to have unreasonably substituted its own concern for the location of debenture holders for the order of this court. *Van Gemert et al. v. Boeing Co.*, No. 66 Civ. 1820, Judgment and Order (S.D.N.Y. September 22, 1977). Therefore, we have deducted the $3,750 expense paid out to Shareholders Communication Corporation by the Kass firm.

Second Amended Application, Kass firm, verified November 18, 1980, par. 4; Reply Affidavit, Solleder, verified October 30, 1980; Letter to Chambers, Solleder, dated December 23, 1980, p. 3.

12. Upon prompt submission of a proper itemization of disbursements for the period covered by the original affirmation of the Nathan firm, those disbursements will be reviewed. Affirmation, Winer, verified July 28, 1977, par. 121.

13. We do not find that plaintiffs' committee is to share equally in fees. Answering Affidavit, Steinman, verified September 1, 1977, p. 11; *Cf. Van Gemert et al. v. Boeing Co.*, Conference minutes, 11–6–80, pp. 14–16.

## APPENDIX I*

| Firm | Hours | Current Reasonable Hourly Rate | Lodestar Fee | Total Lodestar Fee Per Firm |
|------|-------|-------------------------------|--------------|------------------------------|
| 1. Elson, Lasser, Wolff, Berman, Rosenthal & Schanfield | | | | |
| Elson | 123.25 | 160 | $ 19,720.00 | |
| Lasser | 135.5 | 150 | 20,325.00 | |
| Wolff | 170.25 | 150 | 25,537.50 | |
| Berman | 50. | 150 | 7,500.00 | |
| | | | | $ 73,082.50 |
| 2. Sachnoff, Schrager, Jones, Weaver & Rubinstein | | | | |
| Sachnoff | 522.25 | 150 | $ 78,337.50 | |
| Weaver | 231. | 150 | 34,650.00 | |
| Epstein | 9.5 | 110 | 1,045.00 | |
| Gordon | 133.75 | 110 | 14,712.50 | |
| Kroll | 10.75 | 110 | 1,182.50 | |
| Fishman | 40.75 | 100 | 4,075.00 | |
| Pearlman | 68.5 | 100 | 6,850.00 | |
| Dardick | 40.25 | 100 | 4,025.00 | |
| Yannias | 11.25 | 100 | 1,125.00 | |
| Schatz | 14.75 | 100 | 1,475.00 | |
| Taylor | 12.75 | 100 | 1,275.00 | |
| Law Students | 8.25 | 30 | 247.50 | |
| Paralegals | 64. | 30 | 1,920.00 | |
| | | | | $150,920.00 |
| 3. Irving Steinman | | | | |
| Steinman | 1422.** | 160 | $227,520.00 | |
| Weinstein | 319.5 | 150 | 47,925.00 | |
| Sucharow | 193. | 100 | 19,300.00 | |
| | | | | $294,745.00 |
| 4. Kass, Goodkind, Wechsler & Labaton | | | | |
| Wechsler | 1635.25*** | 150 | $245,287.50 | |
| Kass | 1190. | 150 | 178,500.00 | |
| Gerstein | 14.25 | 150 | 2,137.50 | |
| Goodkind | 43.5 | 150 | 6,525.00 | |
| Fuchs | 1041.75 | 110 | 114,592.50 | |
| Churchill | 190. | 110 | 20,900.00 | |
| Labaton | .5 | 150 | 75.00 | |
| Rosen | 425.5 | 110 | 46,805.00 | |
| Skydell | 12.25 | 110 | 1,347.50 | |
| Yohalem | 355.5 | 110 | 39,105.00 | |
| Blumberg | 18. | 100 | 1,800.00 | |
| Shindler | 91.5 | 100 | 9,150.00 | |
| Greene III | 4.5 | 110 | 495.00 | |
| Schacter | 1.25 | 100 | 125.00 | |
| Sternberg | 262. | 110 | 28,820.00 | |
| Harwood | .5 | 110 | 55.00 | |
| Sucharow | 61.5 | 100 | 6,150.00 | |
| Rosengarten | 4.75 | 100 | 475.00 | |
| Avery | 92.25 | 100 | 9,225.00 | |
| Donlevy | 49.25 | 100 | 4,925.00 | |
| Law Students | 42.75 | 30 | 1,282.50 | |
| Paralegals | 35.75 | 30 | 1,072.50 | |
| | | | | $718,850.00 |

| Firm | Hours | Current Reasonable Hourly Rate | Lodestar Fee | Total Lodestar Fee Per Firm |
|------|-------|-------------------------------|--------------|------------------------------|
| 5. Nathan, Mannheimer, Asche, Winer & Friedman | | | | |
| Winer | 3956.5**** | 160 | $633,040.00 | |
| 2 Partners | 15. | 160 | 2,400.00 | |
| Gross | 104.75 | 110 | 11,522.50 | |
| Wittes | 28.5 | 110 | 3,135.00 | |
| Mandel | 225.5 | 100 | 22,550.00 | |
| Pollack | 62.75 | 100 | 6,275.00 | |
| Other Associates | 92. | 100 | 9,200.00 | |
| | | | | $688,122.50 |

   * Hours determined by reference to applications for fees and exhibits annexed thereto.

  ** Includes 250 hour deduction.

 *** Includes 170 hour deduction.

**** Includes 150 hour deduction and correction of a mathematical error. See Petition, Winer, verified 3-28-80, par. 60.

## APPENDIX II

| Firm | Lodestar Fee Excluding Law Student and Paralegal Time | Multi-plier | Total Fee Award Including Law Student and Para-legal Time | Disburse-ments |
|------|------|------|------|------|
| 1. Elson, Lasser, Wolff, Berman, Rosenthal & Schanfield | $ 73,082.50 | 1.7 | $124,240.25 | $ 439.52 |
| 2. Sachnoff, Schrager, Jones, Weaver & Rubenstein | 148,752.50 | 1.7 | 255,046.75 | 6,383.34 |
| 3. Irving Steinman | 294,745.00 | 1.5 | 442,117.50 | 5,079.15 |
| 4. Kass, Goodkind, Wechsler & Labaton | 716,495.00 | 1.7 | 1,220,396.50 | 16,806.69 |
| 5. Nathan, Mannheimer, Asche, Winer & Friedman | 688,122.50 | 1.7 | 1,169,808.20 | 4,291.29 |